UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LOUANN GIAMBATTISTA,

                Plaintiff,

   -vs.-

AMERICAN AIRLINES, INC.,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
13-cv-3608 (ADS)(AKT)

FILED
CLERK

3/20/2014 5:01 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**The Law Office of Steven A. Morelli, P.C.**
*Attorneys for the Plaintiff*
1461 Franklin Avenue
Garden City, NY 11530
      By: Steven A. Morelli, Esq.
           Paul Bartels, Esq., Of Counsel

**Morgan, Lewis & Bockius, LLP**
*Attorneys for the Defendant*
502 Carnegie Center
Princeton, NJ 08540
      By: Michelle S. Silverman, Esq.
           Ashley J. Hale, Esq.
           Melissa C. Rodriguez, Esq., Of Counsel

**SPATT, District Judge**.

    On June 26, 2013, the Plaintiff Louann Giambattista (the "Plaintiff"), an employee of the Defendant American Airlines, Inc. (the "Defendant"), commenced this action, alleging that the Defendant discriminated against her due to a perceived mental disability and fostered a hostile work environment on the basis of that perceived mental disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (the "ADA") and the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* (the "NYSHRL").

1

On November 12, 2013, the Defendant moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

On January 20, 2014, the Plaintiff cross-moved pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint. In doing so, the Plaintiff did not assert new causes of action. Rather, the Plaintiff included additional factual allegations in support of her pending causes of action and in response to the Defendant's arguments in opposition.

For the following reasons, (1) the Plaintiff's motion to amend is granted and (2) and the Defendant's motion to dismiss is granted.

## I. BACKGROUND

A. Factual Background

The following facts are drawn from the original complaint and construed in a light most favorable to the Plaintiff, the non-moving party on the motion to dismiss.

The Plaintiff has worked as a flight attendant for the Defendant since 1979. She is a member of the Association of Professional Flight Attendants (the "Union"), and her employment with the Defendant is governed by a collective bargaining agreement (the "CBA") between the Union and the Defendant. Throughout her employment, the Plaintiff has consistently received positive performance reviews.

According to the Plaintiff, in February 2012, two of her co-workers, Connie Bolt and Dora Sterling – both flight attendants – reported to the United States Immigration and Customs Enforcement ("ICE") and to the Defendant that they believed that the Plaintiff had illegally brought her pet rat on board an international flight. The Plaintiff alleges that her co-workers filed this report because they "were under the false perception . . . that [the Plaintiff] had a

2

mental disability in which she was unable to be away from her pet rats for any period of time." (Compl. ¶13.). Further, the Plaintiff alleges that the Defendant "sanctioned, endorsed, and adopted [the co-workers'] actions, and was apparently under the same false perception that [the Plaintiff] had a mental disability." (Id.).

On February 26, 2012, an ICE agent detained the Plaintiff in a Miami airport and interrogated her about her flight history and future travel plans. The agent searched the Plaintiff's personal items and scanned them through an x-ray machine. The search, which lasted about an hour, did not uncover anything suspicious.

On February 27, 2012, the Plaintiff was again searched in the Miami airport by the same ICE agent, who informed the Plaintiff that he was working on a "direct tip" that she might possess contraband. (Id. at ¶ 16.).

On March 1, 2012, the Plaintiff was "stalked" and followed through a terminal of the John F. Kennedy airport by one of the Defendant's gate agents, until two of the Defendant's security agents and 2 ICE agents apprehended her. The four agents, carrying un-concealed weapons, detained and interrogated the Plaintiff for over an hour in a small room, at one point threatening to "strip search" her. During the interrogation, the door to the room remained open and some of the Plaintiff's fellow flight attendants could observe the incident. At the conclusion of the interrogation, one of the Defendant's security agents asked the Plaintiff if she had "any enemies" at the airline, and queried her whether anyone there wanted her to be in trouble.

The Plaintiff maintains that the March 1, 2012 interrogation severely traumatized her and caused her to suffer symptoms of post-traumatic stress disorder, which negatively affected her ability to perform certain job functions.

On March 2, 2012, the Plaintiff was informed by the Union that an unnamed individual had filed a report with the Defendant, which alleged that the Plaintiff carried pet rats in her pantyhose or underwear onto work flights.

The Plaintiff alleges that, at some point, the Defendant directed ICE to "flag" the Plaintiff's passport so that she would be stopped every time she passed through customs for international flights. As a result, the Plaintiff voluntarily limited her work flights to non-customs flights within the Defendant's international division. On one such flight to San Juan, Puerto Rico, the Plaintiff learned of rumors circulating among her co-workers that the Defendant had "caught" her sneaking on pet rats on board flights (Id. at ¶ 26.).

On March 21, 2012, the Plaintiff received a copy of a written report Sterling filed with the Union, which alleged that the Plaintiff was "hiding something" on a February 26, 2012 flight. The report also alleged that the flight's captain, Brad Rohdenburg, told Sterling that he observed a bulge in the Plaintiff's pocket. Indeed, Rohdenburg reported that he felt what he thought was a live pet in the Plaintiff's pocket.

The Plaintiff was also made aware of a second report, which alleged that she concealed pet rats in her underwear and fed them pieces of bread on work flights.

On March 22, 2012, the Plaintiff asked the Union to demand that the Defendant conduct a "31r" investigation under the CBA into the alleged harassing behavior she received from her co-workers and the Defendant's security representatives. The Plaintiff was informed that representatives of the Union met with the Defendant's Human Resources representatives to discuss the harassment.

On March 28, 2012, ICE agents again detained and searched the Plaintiff on an international flight. An ICE agent informed the Plaintiff that there was a "flag" on her passport

4

for the illegal transport of animals and that, as long as the flag remained on her passport, ICE agents were required to search her bags and possibly her person each time she flew internationally.

The Plaintiff alleges that she subsequently developed a debilitating fear and anxiety of being detained overseas and was unable to work on international flights, causing her lost income.

The Plaintiff insists that she repeatedly asked the Defendant to ask ICE to remove the flag from her passport, yet her requests were denied. The Defendant asked ICE to remove the flag only after the Plaintiff retained counsel.

On April 23, 2012, the Plaintiff spoke to a human resources representative for the Defendant regarding an investigation into the alleged harassment and loss of salary.

On May 8, 2012, the Plaintiff met with Tashia Brown, the Defendant's human resources investigator, to discuss the Plaintiff's concerns. The Plaintiff alleges that Brown informed the Plaintiff that the Defendant would not investigate further without a "formal notification" accusing the individuals of workplace misconduct.

The Plaintiff also alleges that, at some point, she requested a transfer to the Defendant's domestic operations so she could avoid international flights and the accompanying invasive searches by ICE agents. However, for reasons unknown, the Defendant denied the Plaintiff's request for a transfer.

On March 31, 2012, the Plaintiff contacted the Defendant's Employee Assistance program ("EAP") and requested help in coping with the symptoms caused by her post-traumatic stress disorder. The Defendant's EAP representative recommended that the Plaintiff seek counseling for emotional distress, which she did. The Plaintiff continues to receive mental health treatment.

B.  Procedural History

As noted above, on June 26, 2013, the Plaintiff commenced this instant action, asserting claims for discrimination and a hostile work environment due to a perceived mental disability, in violation of the ADA and NYSHRL.  On November 12, 2013, the Defendant moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

On January 20, 2014, the Plaintiff cross-moved pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint.  In the proposed amended complaint, the Plaintiff does not assert additional causes of action.  Rather, the Plaintiff makes further factual allegations in support of her pending causes of action.  In particular, among other contentions, the Plaintiff asserts that (1) the pilot who "groped" her was her "supervisor"; (2) following her co-workers' reports to ICE, several of the Plaintiff's other peers commented that she was "crazy"; that "they would have to take [her] away in white coats"; and expressed surprise that she was married; (3) she asked a Union representative to file a formal grievance to protest the denied transfer, yet her request was denied; and (4) similarly situated co-workers such as Sterling were granted transfers on the grounds of hardship, while the Plaintiff was not granted such relief.

The Defendant opposes the Plaintiff's cross-motion to amend the complaint as futile.  However, the Court finds that the proper inquiry is not whether the Plaintiff's new factual allegations are, by themselves, "futile" or state a claim for relief, but rather whether these new factual allegations, read in conjunction with the original complaint, state a claim for relief.  Because the Defendant does not challenge the motion to amend on grounds other than futility, the Court exercises its discretion to grant the motion to amend. Compare Kidder, Peabody & Co., 87-cv-4936 (DLC), 1994 WL 570072, at *4 (S.D.N.Y. Oct. 13, 1994) (allowing an amendment

when "the proposed amended complaint does not add any new causes of action or new parties. The original complaint alleged that the prospectus falsely inflated the worth of CDI stock. The new allegations only add additional facts to the fraud claim. Thus, the proposed amended complaint is closely related to the original claim, and is based on a similar set of operative facts."), with Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)("leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim")(emphasis added).

"Technically, defendant's motion to dismiss, which was directed to the original complaint, was mooted by the filing of the amended complaint. However, so as not to waste the efforts of the parties, this Court considers the motion as directed to the amended complaint." Verzani v. Costco Wholesale Corp., 641 F. Supp. 2d 291, 297 (S.D.N.Y. 2009)(citations omitted), aff'd, 387 F. App'x 50 (2d Cir. 2010).

## II. DISCUSSION

A. The Standard on a Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In assessing plausibility on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 556 U.S. at 664, and afford the plaintiff every reasonable inference. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). However, allegations must consist of

7

more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 681 (internal quotation marks and citations omitted).

According to Iqbal/Twombly, the complaint survives a motion to dismiss, as long as its allegations of "factual matter, accepted as true" sufficiently "raise a right to relief above the speculative level." Iqbal, 556 U.S. at 678; Twombly, 550 U .S. at 555–56. At the same time, the Complaint cannot conclusorily recite the elements of a claim. Ibid. The factual allegations are sufficient when they allow this Court, at a minimum, to infer that a claim is plausible – an inference which is more than possible, but less than probable – and thereby warrants proceeding with discovery. Ibid.

B. The Claims for Discrimination Under the ADA and NYSHRL

A claim of disability discrimination under the ADA and NYSHRL is governed by the same legal standards. Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n. 1 (2d Cir. 2000). Thus, the Plaintiff's ADA and NYSHRL disability discrimination claims survive or fail on the same basis.

To establish a *prima facie* case of discrimination under the ADA or NYSHRL, an employee has the burden to demonstrate that: (i) the employer is covered by the statute and had notice of her disability; (ii) she was an individual who was disabled within the meaning of the statute; (iii) plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (iv) she was subject to an adverse employment action as a result of her disability. See Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). Disability is defined to include "(A) a physical or mental impairment that substantially limits one

or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2).

Thus, even if Plaintiff is not disabled, she is still afforded the protections of the ADA if she demonstrates that her employer perceived her to be disabled and discriminated against her on that false belief. See Hilton v. Wright, 673 F.3d 120, 128-30 (2d Cir. 2012). It is not necessary to show that the employer identified a major life activity that was substantially limited by the employee's condition. Id. ("[A]n individual meets the requirement of 'being regarded as having such an impairment' if the individual shows that an action . . . was taken because of an actual or perceived impairment, whether or not that impairment limits or *is believed to limit* a major life activity.") (quoting H. R. Rep. No. 110–730, pt. 1, at 14 (2008) (emphasis added)).

In this case, the Court need not decide whether the Plaintiff states a claim that the Defendant discriminated against the Plaintiff because of a perceived disability. Of relevance here, the Defendant contends that the Plaintiff has failed to plead that she suffered any adverse employment action. In response, the Plaintiff asserts that she suffered an adverse employment action in that (1) she was questioned by ICE four times, and during one such incident, personnel of the Defendant was present; (2) she received a "constructive suspension" as the questioning by ICE was so intolerable that any reasonable person would have felt compelled to decline their scheduled shifts; and (3) the Defendant declined her request to transfer from international to domestic flights.

An "adverse employment action" for the purpose of a discrimination claim pursuant to the ADA is a "'materially adverse change' in the terms and conditions of employment." Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (citing Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)). A change in working

conditions is materially adverse if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)). "There are no 'bright-line rules' for determining whether an employee has suffered an adverse employment action." Islamic Soc'y of Fire Dep't Pers. v. City of New York, 205 F. Supp. 2d 75, 83 (E.D.N.Y. 2002) (quoting Richardson, 180 F.3d at 446). However, materially adverse changes in working conditions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Terry, 336 F.3d at 138 (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

In this case, as to the questioning by ICE, there is no allegation that the Defendant had any control over ICE's decision to follow up on reports that the Plaintiff had carried a live animal onto an international flight. Thus, the questioning by ICE cannot constitute an "adverse employment action" by the Defendant.

The Court also finds that the Plaintiff's "constructive suspension" does not qualify as an "adverse employment action" as required by the ADA and NYSHRL for a disability discrimination claim. Constructive discharge, or in this case, suspension, occurs in the absence of a "discrete, identifiable act," when an employer, "'rather than directly discharging an individual, intentionally creates an intolerable atmosphere that forces an employee to quit voluntarily.'" Flaherty v. Metromail Corp., 235 F.3d 133, 138 (2d Cir. 2000) (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996)); see also Morris v. Schroder Cap. Mgmt. Int'l, 481 F.3d 86, 89 (2d Cir. 2007) (holding that constructive discharge "occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions

10

so intolerable that the employee is forced into an involuntary resignation.'")(quoting Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983)). Working conditions are sufficiently "intolerable" when they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987). "Given this high standard, an employee's mere dissatisfaction with job assignments or criticism from a supervisor do not, in themselves, give rise to a constructive discharge claim." Kalp v. Kalmon Dolgin Affiliates of Long Island Inc., 11-CV-4000 (JG), 2013 WL 1232308, at *9 (E.D.N.Y. Mar. 27, 2013), appeal withdrawn (Aug. 30, 2013).

In Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993), the Second Circuit found that an employee who was dissatisfied with his work assignments but had faced no salary reduction and had been given bonuses or raises yearly was not constructively discharged when he resigned. In Petrosino v. Bell Atl., 385 F.3d 210, 230-31 (2d Cir. 2004), the Second Circuit found that where the plaintiff employee was faced with reduced promotion opportunities, but retained her job title, pay, and seniority, her resignation did not constitute constructive discharge. See also Pena v. Brattleboro Retreat, 702 F.2d 322, 326 (2d Cir. 1983) (finding no constructive discharge claim where employer wanted plaintiff to continue working with no change in pay or title but with less authority and responsibility, since plaintiff had shown "only that she strongly disagreed with the business judgments of [her employer]").

Similarly, here, the Plaintiff does not plausibly allege specific conduct by the Defendant that made her working conditions "intolerable." Cf. Timothy v. Our Lady of Mercy Med. Ctr., 03 Civ. 3556 (RCC), 2004 WL 503760, at *7 (S.D.N.Y. Mar. 12, 2004) (finding that the plaintiff had stated a claim for constructive discharge where she had alleged that "she [has] been passed over for positions for which she was qualified . . . been placed in inferior positions below her

11

skill level [,] . . . stripped of her substantive responsibilities, removed from her office, shunted to several inadequate work locations, and that Defendants generally engaged in actions that made it more difficult for her to work"); Coffey v. Cushman & Wakefield, Inc., 01-cv-9447 (JGK), 2002 WL 1610913, at *5 (S.D.N.Y. July 22, 2002)(finding that an allegation of constructive discharge was, in and of itself, sufficient to survive a motion to dismiss but noting the plaintiff's specific allegations of intolerable work conditions); Halbrook v. Reichhold Chems., Inc., 735 F. Supp. 121, 128 (S.D.N.Y. 1990) (finding that the plaintiff had stated a claim of constructive discharge where she had alleged a "change in responsibilities, reduction in workload, humiliation and embarrassment, and the absence of any further chance of advancement"). Accordingly, the Court finds that the Plaintiff failed to plead a "constructive suspension" as an adverse employment action.

Finally, with respect to the Plaintiff's rejected April 2012 request for transfer, the Court notes that "[a] denial of a transfer may also constitute an adverse employment action, but [the courts] require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." Shine v. City of New York, 12 CV 8393 (CM), 2013 WL 5231472, at *7 (S.D.N.Y. July 24, 2013), quoting Beyer v. Cnty. of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) (internal quotations omitted). "Thus, in order to rise to the level of an adverse employment action, the circumstances surrounding the transfer denial must 'permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the employee's current position,' by the presence of objective indicators such as prestige, modernity of available technology, job security and growth, or other benefits." Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces), 791 F. Supp. 2d 332, 338 (W.D.N.Y. 2011)(quoting Beyer). In contrast, if a transfer is "truly lateral and involves no significant changes in an employee's

conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004)(quotation marks and citation omitted); see also Bunis v. Runyon, 94-cv-2063 (JFK), 1997 WL 639241, at *3, 1997 U.S. Dist. LEXIS 16045 at *10 (S.D.N.Y. 1997) (the plaintiff's subjective feelings about denial of a shift-change request was not enough to transform the denial into an actionable adverse employment action).

Here, no facts pleaded state that the denial of reassignment was a "material disadvantage" for the Plaintiff or anything more than a subjective disappointment. The Plaintiff has not stated that a position for the Defendant as flight attendant on international flights was materially less prestigious, materially less suited to her skills, or materially less conducive to career advancement than a similar position on domestic flights. The Court need not address the Defendant's argument that the rejected request for transfer is governed by the CBA and any claim arising thereunder is preempted by Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-88.

In short, the Plaintiff's amended complaint fails to plead an adverse employment action required for an ADA and NYSHRL claim and the Court grants the Defendant's motion to dismiss those claims.

C. The Hostile Work Environment Claims Under the ADA and NYSHRL

The Defendant contends that the Plaintiff's hostile work environment claims must be dismissed because the Plaintiff fails to plead that the harassment she faced was sufficiently severe or pervasive. A plaintiff asserting that she has been subjected to a hostile work environment based on a covered disability must allege "that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of

[his or] her employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).

"[T]he Second Circuit has yet to rule on the issue of whether or not the ADA recognizes a hostile work environment claim." Forgione v. City of New York, 11-CV-5248 (JG), 2012 WL 4049832, at *7 n. 6 (E.D.N.Y. Sept. 13, 2012); Farina v. Branford Bd. of Educ., 458 Fed. Appx. 13, 17 (2d Cir. 2011) ("Even assuming, arguendo, that the ADA provides a basis for a hostile work environment claim [an issue this Court has not yet decided] . . . ."); Margherita v. FedEx Exp., 511 Fed. Appx. 71, 73 (2d Cir. 2013) (summary order).

Assuming that a hostile work environment claim is cognizable under the ADA, a plaintiff "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)) (internal quotation marks omitted). Whether a workplace is a hostile work environment under the provisions of the ADA requires consideration of the totality of the circumstances. These include "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

Considering these factors, the Court concludes that the Plaintiff fails to state a hostile work environment claim under the ADA. The amended complaint alleges that the Plaintiff's coworkers made offensive quips about her perceived disability, including calling her "crazy" and

implying that she should be taken away by psychiatrists. The amended complaint further alleges that Captain Rohdenburg groped the Plaintiff on one occasion. "However, these isolated, minor acts or occasional episodes[, coupled with the other alleged incidents,] do not warrant relief under a hostile environment theory." Forgione, 2012 WL 4049, at *7 (citation and quotation marks omitted).

Even if the Plaintiff had alleged a hostile work environment based on her perceived disability, the Plaintiff must allege some factual basis to impute the actions giving rise to the hostile work environment to her employer. Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000)(discussing a claim under Title VII). Of importance, an employer may be presumed responsible where the alleged harasser is the plaintiff's supervisor and the harassment culminated in some tangible employment action. See Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). "Such vicarious liability is found where there is a tangible employment action because the supervisor could not have taken such action absent his or her agency relationship with the employer." Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 63 (D. Mass. 2002).

Here, although the amended complaint alleges that Captain Rohdenburg was the Plaintiff's "supervisor" at the time of the incident in question, it fails to link a tangible employment action to his allegedly harassing behavior. For these reasons, the Plaintiff has failed, as a matter of law, to allege a hostile work environment claim under the ADA.

The standard under the NSHRL is identical to the ADA. Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006). Therefore, the Court also dismisses the Plaintiff's NYSHRL hostile work environment claim.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Court (1) grants the Plaintiff's motion for leave to file an amended complaint; (2) considers the Defendant's motion to dismiss as directed to the amended complaint; (3) grants the Defendant's motion to dismiss all the causes of action and dismisses the amended complaint in its entirety; and (4) directs the Clerk of the Court to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
March 20, 2014

                *Arthur D. Spatt*
                ARTHUR D. SPATT
                United States District Judge